UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| STEVEN BROWN and LINDA BROWN | : | |
| Debtors | : | Bankruptcy No. 12-14058 |

.................................................

MEMORANDUM

.................................................

Before me are motions filed by Mario Ferroni and Roberta A. Deangelis, Esq., the United States Trustee for Region 3, both seeking to dismiss this chapter 11 case pursuant to 11 U.S.C. § 1112(b)(1).[1]  Their motions are supported by Michael and Theresa Dolan.  Although all four parties contend that this case should be dismissed, their contentions differ slightly, as will be discussed.

The debtors oppose dismissal and request the opportunity to submit another chapter 11 plan to creditors for creditor voting.[2]  The debtors contend that they can propose a viable plan that can be confirmed.  In support of this contention they have filed an amended chapter 11 plan that, the debtors argue, meets the confirmation requirements of section 1129(b).

_____

[1]Mr. Ferroni's motion to dismiss was filed along with his objection to confirmation of the debtors' earlier proposed chapter 11 plan.  Confirmation of the debtors' plan was denied by order dated July 23, 2013, thus leaving the request for dismissal.

[2]After confirmation of the debtors' prior plan was denied, the debtors filed a new disclosure statement and plan.  Although the debtors moved for court approval of their "2nd Modified Disclosure Statement," they conceded at the hearing that further modifications were needed before approval could be granted.  See also Debtors' Post-Hearing Memorandum, at 1. Thus, the sole issue I need now address is whether this chapter 11 case should be dismissed under section 1112(b).

The movants counter, and the Dolans agree, that submitting any further plans for creditor voting would be pointless, as no plan these debtors can afford could be confirmed.  Therefore, they maintain this chapter 11 case should be dismissed.

After reviewing the parties' thoughtful post-hearing submissions, for the following reasons I find that dismissal of this case is warranted.  In so concluding, I shall address an issue of almost first impression within this circuit: whether the 2005 amendments to the Bankruptcy Code eliminated the requirement that individual chapter 11 debtors must meet the absolute priority rule when an impaired unsecured creditor class does not vote in favor of their plan.[3]

I.

After an evidentiary hearing, the following facts, as relevant to this dispute, were proven.[4]

---

[3]The only court within this circuit to consider the issue did so recently in a brief footnote, stating that the absolute priority rule still applied in individual chapter 11 cases.  See In re Grasso, 2013 WL 3563674, at *9 n.13 (Bankr. E.D. Pa. July 11, 2013) (Coleman, B.J.).

[4]The debtors' post-hearing memorandum attached documents, denoted exhibits A through D, which concern their finances and those of their affiliated companies.  Those documents were not introduced in evidence at the hearing and so cannot now be considered, as the United States Trustee, Mr. Ferroni, and the Dolans had no opportunity to challenge their authenticity or admissibility, cross-examine witnesses regarding those documents, or offer rebuttal evidence.  See, e.g., In re Millman, 2003 WL 716289, at *3 n.12 (Bankr. E.D. Pa. Feb. 3, 2003); In re MacDonald, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998); In re Midway Airlines, Inc., 221 B.R. 411, 462-63 (Bankr. N.D. Ill. 1998); Matter of Holly's, Inc., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995).  Accordingly, I have not considered the debtors' factual contentions in their post-hearing memorandum that are based upon those documents.

The debtors, Steven and Linda Brown, filed a joint voluntary bankruptcy petition under chapter 11 on April 25, 2012. Mr. Brown is an architect, licensed in Pennsylvania, and Mrs. Brown is a homemaker and volunteer special education teacher. Only Mr. Brown earns income, see ex. T-1 (Schedule I), and it is with his income that the debtors intend to reorganize.

In addition to providing architectural services, Mr. Brown also earns income as a construction manager and general contractor. He performs all of these services as an employee/member of one or more of the following three entities: Design Associates, Inc.; Design Build, LLC; and Build US, LLC. See ex. T-1; see generally 63 P.S. §§ 34.1, et seq. ("Architects Licensure Law"). Mr. Brown explained that he distributes all net income earned by Design Associates and Build US into Design Build, and then takes distributions from Design Build.

Indeed, Mr. Brown now operates primarily through Design Build, averring that he ceased using Design Associates in 2011 and formed Build US in 2011. See ex. F-4 (2011 Federal Tax Form 1120 for Build US, LLC). He is the sole member of Design Build, the sole shareholder of Design Associates, and one of two members (along with his bookkeeper) of Build US.[5]

Design Associates, a subchapter S corporation, although not currently operating, has not dissolved as a corporation and has asserted a mechanics lien claim against real property owned by Mr. and Mrs. Dolan in the approximate amount of

---

[5]In 2010 and 2011, the debtor also operated an entity known as Line Road Associates, L.P. See exs. T-1, at 1; F-4 (2010 and 2011 Federal Tax Forms 1065). Mr. Brown is the general partner of this limited partnership. See ex. F-4 (Line Road Partnership Agreement). No evidence was presented whether this partnership is still in existence and, if so, whether it has any assets.

$150,000.  Ex. F-1.  The Dolans, in turn, have alleged causes of action in state court against Mr. Brown individually, as well as against Design Associates.  See also exs. F-5, at 2; F-6.  Design Associates has incurred $22,000 in legal fees, while Mr. Brown's malpractice insurer is paying for his individual defense.  The Dolans filed an unsecured proof of claim in the amount of $143,240.59, docketed as proof of claim #16, to which the debtors have objected.  See docket entry #178.

Design Build has current contracts for architectural work and has submitted proposals for construction management services.  Mr. Brown testified that he takes distributions from this company as needed to pay his family expenses, and asserts that these distributions average about $11,000 per month.  See also ex. F-7 (Amended Bankruptcy Schedule I).  He further averred that his monthly expenses average approximately $9,710.  Id. (Amended Bankruptcy Schedule J).  The debtors' monthly operating reports, however, reflect a lower average net monthly income.  See ex. T-5.

At the time of their bankruptcy filing, the debtors (and two of their children) resided in real property owned jointly, located at 922 Cedar Grove Road, Broomall, Pennsylvania.  They also owned property located at 1334 Burke Road, West Whiteland, Pennsylvania, and Mr. Brown owned realty located at 224 Dutton Mill Road, Willstown, Pennsylvania.  Ex. T-1.

The West Whiteland realty is secured by a mortgage held by TD Bank.  The mortgagee has obtained relief from the bankruptcy stay to foreclose and the debtors anticipate that this property will be sold at an execution sale with TD Bank asserting a deficiency claim estimated at $50,000.  See ex. Dolan-1, at 3, 10.

4

The Willstown property was secured by a lien held by Mr. Ferroni. Ex.

Dolan-1, at 4. Mr. Ferroni confessed judgment against the debtors and began execution

proceedings, which is the underlying reason the debtors filed their voluntary bankruptcy

petition. Id., at 4; Debtors' Post-Hearing Memorandum, at 2, 6. Mr. Ferroni executed

upon the Willstown property and filed a deficiency claim in this court in the amount of

$489,000. See Claim Register, Proof of Claim #13. The debtors were afforded an

opportunity to object to this deficiency claim, see docket entry #119 (Order dated May 15,

2013), but opted not to do so. Thus, for purposes of this contested matter, Mr. Ferroni's

claim will be deemed allowed. See 11 U.S.C. § 502(a); Debtors' Post-Hearing

Memorandum, at 2.

On the debtors' Amended Bankruptcy Schedule C they elected the federal

bankruptcy exemptions found in section 522(b)(2). Ex. T-1. Rather than take any

homestead exemption under section 522(d)(1),[6] the debtors chose to take an additional

"wildcard" exemption permitted by section 522(d)(5), see generally In re Ladd, 450 F.3d

751, 754 (8th Cir. 2006), and claimed as exempt all of their scheduled personal property

listed on Bankruptcy Schedule B, except for Mr. Brown's interests in Design Build, Build

US, and Design Associates. The debtors contend that the value of these interests is

"unknown." See ex. T- (Amended Schedule B).

As noted above, after confirmation of their initial chapter 11 plan was

denied, the debtors filed an amended chapter 11 plan, ex. T-3, which they assert can be

---

[6]They believe their residence is overencumbered. See ex. T-1 (Amended
Schedule A).

5

confirmed and should be submitted to creditors for voting.  This amended proposed plan

may be summarized in relevant part as follows:

> 1. The debtors will continue to pay the first mortgagee, Wells
> Fargo Bank, and the second mortgagee, Malvern Federal
> Savings and Loan, their regular monthly mortgage payments
> secured by their residence, and which obligations they
> contend are current;

> 2. The debtors propose to pay a small secured claim asserted
> by the Pennsylvania Department of Revenue in full within 30
> days after an order of confirmation is entered.

> 3.  All allowed unsecured claims, including the deficiency
> claims held by Mr. Ferroni and TD Bank, are placed in class
> 6.  The debtors propose to pay $15,000 per annum to this
> class, to be distributed pro rata.[7]

Ex. T-3, at 7.  Although the proposed plan does not so state, the debtors orally argued

through their counsel that they intended to distribute payments to class 6 in quarterly

installments for five years, thus totaling $75,000.  See also Debtors' Post-Hearing

Memorandum, at 16 (referring to the "five year term of the plan").

---

[7]I appreciate that the debtor's proposed plan places the claims of TD Bank and
Mr. Ferroni in classes 3 and 5 respectively, and not in class 6.  Ex. T-3, at 7.  However, the plan
does refer to these creditors as holding unsecured claims in the approximate amounts of $50,000
and $489,000 respectively, and that other unsecured claims "aggregate approximately
$22,174.20."  Id., at 7.  The plan expressly states that class 6 is composed of "General Unsecured
Claims" and that the proposed distribution to class 6 will be "approximately fifteen thousand
($15,000) dollars a year, which will be distributed pro rata to the holders of allowed unsecured
claims."  Id., at 7.  Unless the debtors' proposed plan intended the unsecured claims of TD Bank
and Mr. Ferroni to be included in class 6, there would be no need for any pro rata distribution to
class 6 creditors.  Instead, the plan would simply propose full payment of class 6 claims in less
than two years.

Accordingly, I need not consider whether the debtors' proposed plan seeks
impermissibly to classify unsecured deficiency claims separately.  See In re Swedeland
Development Group, Inc., 16 F.3d 552, 568 (3d Cir. 1994) ("We recently held that the deficiency
claim of an undersecured mortgagee could not be classified separately from the claims of other
unsecured creditors of the debtor. . . ." (citing John Hancock Mutual Life Ins. Co. v. Route 37
Business Park Assocs., 987 F.2d 154, 161 (3d Cir. 1993)).

The interests of the debtors are placed in class 7 of the proposed plan, but the plan does not expressly provide for the treatment of this class, other than as follows:

> On the Effective Date and except as otherwise set forth in this Plan, the Reorganized Debtors shall be vested with all assets that comprise the Debtors' estates, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders.  As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court free of any restrictions of the Bankruptcy Code other than as expressly set forth in the Plan or the Confirmation Order.

Ex. T-3, at 10 (¶ 7.1).

Since "[t]he Reorganized Debtors shall fund the payments required under the Plan from husband's continued business operations," id., at 11 (¶ 7.3.1), I conclude that the proposed plan must provide for Mr. Brown to retain his prepetition interests in his three entities: Design Associates, Design Build, and Build US.  Moreover, the income derived from these entities is the debtors' only possible source of plan funding.

At the hearing, it was agreed that Mr. Ferroni's allowed unsecured claim will not and cannot be paid in full.  See also Debtors' Post-Hearing Memorandum, at 13. Moreover, the debtors acknowledged at the hearing that Mr. Ferroni will not vote in favor of the debtors' current plan, nor vote in favor of any plan that they could afford to fund. See also id.  It is also undisputed that were Mr. Ferroni to vote against the debtors' chapter 11 plan then the unsecured creditor class, class 6, will have rejected the proposed plan, because Mr. Ferroni's allowed claim far exceeds the one-third threshold for a blocking position under section 1126(c).  See generally In re Swedeland Development

Group, Inc., 16 F.3d 552, 568 (3d Cir. 1994); see also Debtors' Post-Hearing

Memorandum, at 2 (Mr. Ferroni holds "a blocking vote").


II.


A.


As mentioned above, Mr. Ferroni and the United States Trustee separately

filed motions to dismiss this chapter 11 case, motions supported by the Dolans.  Both

movants contend that the debtors are unable to reorganize under chapter 11, warranting

dismissal under 11 U.S.C. § 1112(b)(1).

In determining this issue, I shall focus only upon whether there is a realistic

possibility that any feasible plan they might propose could be confirmed and not whether

the precise amended plan the debtors have filed would be approved.  See generally In re

American Capital Equipment, LLC, 688 F.3d 145, 161-62 (3d Cir. 2012); In re Fossum,

764 F.2d 520, 521-22 (8th Cir. 1985); see also In re Cedar Shore Resort, Inc., 235 F.3d

375, 381 (8th Cir. 2000) (section 1112(b) permits dismissal of a chapter 11 case when

there is a lack of any realistic possibility of confirming a plan).  The terms of the debtors'

amended plan were outlined above because this plan contains many provisions that would

be included in any chapter 11 plan these debtors could reasonably propose.

Mr. Ferroni, emphasizing information on certain federal tax returns filed by

Design Build, Design Associates, and Build US, see ex. F-4, as well as upon certain

expenses the debtors have incurred since the bankruptcy filing, contends that the debtors

proposed amended plan materially understates their projected disposable income for purposes of section 1129(a)(15)(B), thereby precluding confirmation.  See generally In re Gbadebo, 431 B.R. 222, 226-27 (Bankr. N.D. Cal. 2010).  In contrast, the Dolans, relying upon the debtors' monthly operating reports, see ex. T-5, maintain that the debtors are overstating their projected disposable income and thus their proposal to tender $15,000 per annum is not feasible under section 1129(a)(11).  See generally In re Hockenberry, 457 B.R. 646, 659-60 (Bankr. S.D. Ohio 2011); In re Chadda, 2007 WL 3407375, at *6 (Bankr. E.D. Pa. Nov. 9, 2007).  Since these chapter 11 debtors may be able to modify their plan proposal to address these two confirmation issues, see 11 U.S.C. § 1127(a), I view it as inappropriate to conclude, based upon this evidentiary record, that these debtors could never meet the two above-mentioned confirmation requirements, sections 1129(a)(11) and (a)(15), and so justify dismissal at present.  (Indeed, the debtors argue strenuously in their post-hearing memorandum that they can afford to pay $15,000 annually to their creditors, for reasons I need not now evaluate.)

In addition, Mr. Ferroni, orally joined by the Dolans as well as the United States Trustee at the hearing, contends that these debtors cannot propose any chapter 11 plan that would meet the good faith requirement found in 11 U.S.C. § 1129(a)(3).  See Ferroni, Motion to Dismiss ¶¶ 5-15;  Dolans' Post-Hearing Memorandum, at 15-16.  He argues that the debtors failed to disclose in their initial Bankruptcy Schedules and Statement of Financial Affairs material financial information including: all income received in 2011, Design Associates' mechanics lien claim, the Dolans' litigation against Mr. Brown, distributions made by entities controlled by Mr. Brown, Mr. Brown's interest

in Design Associates, and Mr. Brown's interest in a retirement account.[8]  Furthermore, the debtors never informed the Dolans of their joint bankruptcy filing, nor filed a Suggestion of Bankruptcy with the state court; the movants argue that, as a result of this omission, attorney's fees were needlessly incurred reducing funds that should have been available to creditors.  Mr. Ferroni also complains that the debtors' monthly operating reports were incomplete as they do not include information about Design Associates and Build US.  See Fed. R. Bankr. P. 2015.3(a).

Based upon these failures, which the movants contend were made by the debtors either knowingly or recklessly, the movants argue that the debtors cannot now propose any chapter 11 plan in good faith.  See In re Georgetown Limited Partnership, 209 B.R. 763, 769-70 (Bankr. M.D. Ga. 1997); see also Tenn-Fla Partners v. First Union Nat'l Bank of Florida, 229 B.R. 720, 734 (W.D. Tenn. 1999) (plan was not proposed in good faith when plan proponent failed to disclose the actual value of property dealt with by the plan).[9]

The debtors reply that any omissions in their Bankruptcy Schedules and Statement of Financial Affairs were either immaterial or inadvertent, and that these errors and omissions have been or will be corrected, thus rendering any plan proposed by them in good faith.  See In re Marshall, 298 B.R. 670, 677-78 (Bankr. C.D. Cal. 2003); see

---

[8]The debtors acknowledge that Mr. Brown has approximately $22,000 in a retirement account.  See Debtors' Post-Hearing Memorandum, at 5.

[9]Mr. Ferroni also argues, post-hearing, that these same failures and omissions justify dismissal under section 1112(b)(4)(B) and (F), and would prevent the debtors from meeting the confirmation requirement under section 1129(a)(2).  As will be seen, I need not address these alternative contentions.

generally Federal Nat'l Mortg. Ass'n v. Village Green I, GP, 483 B.R. 807, 821-22 (W.D.

Tenn. 2012).  They also explain as follows:

> Any failures to disclose and omissions were excusable due to
> the fact that [the debtors] were unaware of the failure to
> disclose.  It should also be noted that counsel for the Debtor is
> to blame for allowing documents to be filed that lacked
> information and for failing to discover pending litigation
> through a public records search.  Counsel for the Debtor is
> also at fault for allowing the late filing of important
> documents.  Debtors should not be punished for their
> Counsel's failings.  For these reasons, Debtors assert
> reasonable justification for omissions which they have
> addressed and cured within a reasonable time.

Debtors' Post-Hearing Memorandum, at 13; cf. In re Jones, 490 F.2d 452, 456-57 (5th

Cir. 1974) (mistakes of counsel did not preclude debtor from receiving a bankruptcy

discharge); In re Topper, 229 F.2d 691, 693 (3d Cir. 1956) (same).

Recognizing that "good faith" under section 1129(a)(3) is not defined, the

Third Circuit has adopted the Seventh Circuit's definition of this confirmation

requirement.  In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 150 n.5 (3d Cir.

1986):

> "[F]or purposes of determining good faith under section
> 1129(a)(3) . . . the important point of inquiry is the plan itself
> and whether such a plan will fairly achieve a result consistent
> with the objectives and purposes of the Bankruptcy Code."
> The purpose of requiring such a finding . . . prevents a
> debtor-in-possession or trustee from effectively abrogating the
> creditor protections of Chapter 11.

(quoting In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir.1984)); see In re

Federal-Mogul Global Inc., 684 F.3d 355, 381 (3d Cir. 2012); In re Combustion

Engineering, Inc., 391 F.3d 190, 247 (3d Cir. 2004); In re PWS Holding Corp., 228 F.3d

224, 242 (3d Cir. 2000).

11

The Court of Appeals has further explained the objectives and purposes that the good faith requirement of section 1129(a)(3) is intended to protect:

> Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors [.]" Bank of Am. Nat.'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 . . . (1999) (citing Toibb v. Radloff, 501 U.S. 157, 163 . . . (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," Walters v. U.S. National Bank of Johnstown, 879 F.2d 95, 98 (3d Cir. 1989), "discourag[ing] debtor misconduct," id., "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," Integrated Solutions, Inc. v. Service Support Specialties, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. In re Kaiser Aluminum Corp., 456 F.3d 328, 339–43 (3d Cir. 2006).

In re American Capital Equipment, LLC, 688 F.3d 145, 157 (3d Cir. 2012) (parallel citations omitted); see, e.g., In re WR Grace & Co., 2013 WL 4734074, at *11 (3d Cir. Sept. 4, 2013).

In applying section 1129(a)(3), "[t]he requisite good faith determination is based on the totality of the circumstances." In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002); see, e.g., In re Village at Camp Bowie I, L.P., 710 F.3d 239, 247 (5th Cir. 2013); In re Piper Aircraft Corp., 244 F.3d 1289, 1300 (11th Cir. 2001).

In considering the evidence presented, I find that the strongest argument posed by the movants involves the debtors' failure to disclose Mr. Brown's interest in Design Associates and that entity's mechanics lien claim against the property of Mr. and Mrs. Dolan. As Mr. Brown acknowledged, if the mechanics lien claim is successful, he may receive a significant distribution after payment of outstanding corporate liabilities. See generally 15 Pa. C.S.A § 1551. The other errors and omissions were either not significant (e.g., the debtor's modest retirement account may be exempt property under

section 522(d)(12)), or not clearly material on this record (e.g., the attorney's fees paid in the Dolan litigation may have been non-estate property paid for the benefit of a non-debtor entity; the distributions made by debtor-owned entities may have been used, in part, to pay business operating expenses, including payments to subcontractors).

As for the material omissions concerning Design Associates, for purposes of this motion I will accept as credible Mr. Brown's testimony that he failed initially to disclose his interest because Design Associates had ceased doing business at the time of his bankruptcy filing, and that he did not separately disclose information about Design Associates and Build US because all of their net income is paid to Design Build. Furthermore, he did not mention the Dolan litigation to his bankruptcy counsel since that counsel had been referred to him by his attorney in the state court Dolan litigation; in other words, he assumed that bankruptcy counsel knew of the litigation and had concluded that it need not be disclosed. Thus, for purposes of the instant motions, I will accept that these omissions were neither willful nor reckless. See generally In re Buck, 166 B.R. 106 (Bankr. M.D. Tenn. 1993); see also In re Soult, 97 B.R. 363 (S.D. Ohio 1989); In re Morris, 58 B.R. 422 (Bankr. N.D. Tex. 1986).

Accordingly, for these reasons I find that these debtors may propose a chapter 11 plan that would meet the good faith requirement of section 1129(a)(3). See generally In re WR Grace & Co.. 2013 WL 4734074, at *11-*12 (3d Cir. 2013).[10]

---

[10]Mr. Ferroni and the Dolans also argue in their post-hearing submissions that the debtors have not filed the instant chapter 11 case in good faith for the same reasons that they argue that the debtors cannot propose a plan in good faith. This ground was not raised in Mr. Ferroni's motion to dismiss.

The Third Circuit has recently observed that: "The question of whether a Chapter 11 bankruptcy petition is filed in good faith is a judicial doctrine, distinct from the statutory good

(continued...)

B.


        In addition, Mr. Ferroni and the Dolans, but not the United States Trustee,

also contend that the debtors cannot confirm a chapter 11 plan because they cannot meet

the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii), known as the "absolute priority rule."[11]

The debtors conceded at the hearing that if the absolute priority rule is applicable in this

case they would be unable to confirm any chapter 11 plan and dismissal would be

warranted.  See Debtors' Post-Hearing Memorandum, at 2 ("We agree that if the Court

determines that . . . the absolute priority Rule applies to individual Chapter 11 cases . . .

that this case may be dismissed.").   The debtors assert, however, that Congress abrogated

the absolute priority rule for individual chapter 11 debtors in 2005.

---

[10](...continued)
faith requirement for confirmation pursuant to § 1129(a)(3)."  In re American Capital Equipment,
LLC, 688 F.3d 145, 157 (3d Cir. 2012).  Whether any bankruptcy case is filed in bad faith
depends upon the totality of the circumstances.  See, e.g., In re 15375 Memorial Corp. v. Bepco,
L.P., 589 F.3d 605, 618 (3d Cir. 2009).  While the totality of the circumstances approach is not
constrained to any particular fact pattern, the Third Circuit has generally instructed: "Our cases
have accordingly focused on two inquiries that are particularly relevant to the question of good
faith: (1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going
concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed
merely to obtain a tactical litigation advantage."  In re Integrated Telecom Express, Inc., 384 F.3d
108, 119-20 (3d Cir. 2004), cert. denied, 545 U.S. 1110 (2005) 384 F.3d at 119-20; see In re
15375 Memorial Corp. v. Bepco, L.P., 589 F.3d at 618.
        In this contested matter, Mr. Ferroni and the United States Trustee both alleged
that dismissal was warranted because the debtors cannot reorganize, and the debtors have
focused upon that issue in their opposition.  To the extent that Mr. Ferroni now contends that the
debtors acted in bad faith in filing their April 2012 chapter 11 petition, and that bad faith is
distinct from the question of their ability to confirm a chapter 11 plan, I decline to address it as I
conclude that reorganization is not possible.

[11]The United States Trustee declined to take a position on this legal issue.

14

Case 12-14058-bif   Doc 198   Filed 09/26/13   Entered 09/26/13 15:42:53   Desc Main
Document    Page 15 of 38

As the parties agree that this legal issue is dispositive, in that there is no possible plan these debtors could propose that would not involve consideration of this issue, and as it has been well-addressed in their post-hearing memoranda, it is ripe for consideration.

In general, confirmation of a chapter 11 plan requires that the plan proponent meet all the requirements of section 1129(a).  See, e.g., In re Dupell, 2000 WL 192972, at *3 (Bankr. E.D. Pa. Feb. 15, 2000); In re Future Energy Corp., 83 B.R. 470, 481 (Bankr. S.D. Ohio 1988).  The sole exception involves subsection 1129(a)(8), requiring every impaired class of claims or interests to accept the plan.  If all the provisions of section 1129(a) are established, save those of subsection 1129(a)(8), then the plan proponent can still seek plan approval, albeit under section 1129(b).  See 7 Collier on Bankruptcy, ¶ 1129.02[8] (16th ed. 2012):

> The condition set forth in section 1129(a)(8) is the only condition precedent which is not absolutely necessary for confirmation.  If a plan satisfies the confirmation criteria set forth in section 1129(a), including the requirement that if a class of claims is impaired, at least one impaired class of claims accepts the plan, the plan may be confirmed notwithstanding the opposition of one or more impaired classes of claims or interests, provided the plan satisfies section 1129(b).

As mentioned earlier, the debtors' proposed plan contends that class 3, the claim of TD Bank, class 4, the claim of the Pennsylvania Department of Revenue, and class 5, the claim of Mr. Ferroni, are all impaired classes.[12]  Ex. T-3, at 7.  It makes no

---

[12]As explained in note 7 above, I believe that the debtors' plan actually places the unsecured claims of TD Bank and Mr. Ferroni in class 6, although TD Bank may hold a class 3 secured claim if it has not yet sold its collateral via foreclosure.  The analysis below, however, is not altered if Mr. Ferroni were to hold a class 5 rather than a class 6 claim.

15

mention of class 6, the claims of unsecured creditors, which class indeed is impaired

within the meaning of section 1124.   Although not free from doubt, for purposes of the

instant motions to dismiss, I shall assume that there is a possibility that the debtors could

propose a plan in which one impaired class of creditors, now denominated as class 3 or 4,

would vote in favor of a plan proposed by the debtors, thereby satisfying section

1129(a)(10).   It is agreed, however, that there is no plan that the debtors could propose,

such as the one they recently filed, in which the impaired class containing the allowed

unsecured claim of Mr. Ferroni will vote in favor of the debtors' plan.  See Debtors' Post-

Hearing Memorandum, at 2.

> As summarized by the Third Circuit Court of Appeals:
>
> Confirmation of a proposed Chapter 11 reorganization plan is
> governed by 11 U.S.C. § 1129.  A court will confirm a plan if
> it meets all of the requirements set out in section 1129(a).
> Only one of these requirements concerns us in this appeal, and
> that is the requirement that the plan be consensual, with
> unanimous acceptance by all of the impaired classes.  11
> U.S.C. § 1129(a)(8).  If the plan is not consensual, a court
> may still confirm as long as the plan meets the other
> requirements of section 1129(a), and "does not discriminate
> unfairly, and is fair and equitable" as to any dissenting
> impaired class.  11 U.S.C. § 1129(b)(1); see Bank of Am.
> Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526
> U.S. 434, 441, 119 S. Ct. 1411, 143 L. Ed.2d 607 (1999)
> [hereinafter LaSalle ].  The latter type of confirmation is also
> called a "cram down," as the court can cram a plan down over
> the objection of an impaired class.  See generally Kenneth N.
> Klee, All You Ever Wanted to Know About Cram Down
> Under the New Bankruptcy Code, 53 Am. Bankr. L.J. 133
> (1979).

In re Armstrong World Industries, Inc., 432 F.3d 507, 511-12 (3d Cir. 2005); see, e.g.,

 LaSala v. Bordier et Cie, 519 F.3d 121, 133 n.16 (3d Cir. 2008) ("For a plan to be

approved, either (1) each impaired class must accept the plan, or (2) the bankruptcy court

16

must approve the plan as 'fair and equitable' despite a class's disapproval.  11 U.S.C. § 1129(b).")

Since the parties in this contested matter agree that there is no possibility that all impaired classes will accept a plan proposed by these debtors, they can only achieve confirmation by complying with the fair and equitable requirements of section 1129(b).  Moreover, because the impaired class that includes Mr. Ferroni's unsecured claim will not vote for any plan that the debtors can reasonably propose, the provisions of 11 U.S.C. § 1129(b)(2)(B)—detailing requirements for fair and equitable treatment of a dissenting class of unsecured creditors—are germane in this contested matter.

As explained by the Supreme Court, one important component of the "fair and equitable" standard in section 1129(b)(2)(B) is the "absolute priority rule" found in clause (ii).  This rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan."  Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988) (quoting In re Ahlers, 794 F.2d 388, 401 (8th Cir. 1986)).  The Court further explained:

> As to a dissenting class of impaired unsecured creditors, such a plan may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property," § 1129(b)(2)(B)(ii).  That latter condition is the core of what is known as the "absolute priority rule."

Bank of America National Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship, 526 U.S. 434, 441-42 (1999).

17

It is undisputed that no plan could be proposed by these debtors in good faith that could provide for the payment in full of the unsecured deficiency claim of Mr. Ferroni. Therefore, the debtors cannot comply with section 1129(b)(2)(B)(i). It is also agreed by the debtors that no plan could be proposed by them in good faith that could not provide for Mr. Brown to retain his interests in his business entities, even though the unsecured creditor class containing Mr. Ferroni's claim will not be paid in full. Therefore, if the absolute priority rule found in section 1129(b)(2)(B)(ii) applies in individual chapter 11 cases, such as this one, the debtors concede that there is no plan they may propose in good faith that would not run afoul of this confirmation requirement.

C.

Before 2005, the Supreme Court, in Norwest Bank Worthington v. Ahlers, concluded that the absolute priority rule applied in a chapter 11 case filed by individual debtors, and that this provision would be violated by the Ahlers's retaining their interest in their family farm. Id., 485 U.S. at 202 ("There is little doubt that a reorganization plan in which respondents retain an equity interest in the farm is contrary to the absolute priority rule.").

In addition, the Ahlers Court held that if an exception or corollary to the absolute priority rule, referred to as the "new value exception," exists, that exception— which has generally been stated to require the junior interest holder that was retaining property to provide "1) new, 2) substantial, 3) money or money's worth, 4) necessary for a successful reorganization and 5) reasonably equivalent to the value or interest

18

received," <u>In re Bonner Mall Partnership</u>, 2 F.3d 899, 908 (9th Cir. 1993)—would not be

met by the Ahlers's proposal to fund their plan through future income earned from their

farming efforts.  <u>Ahlers</u>, 485 U.S. at 204:

> Viewed from the time of approval of the plan, respondents'
> promise of future services is intangible, inalienable, and, in all
> likelihood, unenforceable.  It "has no place in the asset
> column of the balance sheet of the new [entity]."  <u>Los
> Angeles Lumber</u>, 308 U.S., at 122-123, 60 S. Ct., at 11.
> Unlike "money or money's worth," a promise of future
> services cannot be exchanged in any market for something of
> value to the creditors today.  In fact, no decision of this Court
> or any Court of Appeals, other than the decision below, has
> ever found a promise to contribute future labor, management,
> or expertise sufficient to qualify for the <u>Los Angeles Lumber</u>
> exception to the absolute priority rule.

<u>See</u> <u>also</u> <u>id.</u>, at 206 ("We conclude that the [absolute priority] rule applies here, and

respondents' promise of future labor warrants no exception to its operation.").

Finally, the <u>Ahlers</u> Court also concluded that the retention of a property

interest, even one whose value is primarily dependent upon future services provided by

the chapter 11 debtor, violates the absolute priority rule found in section

1129(b)(2)(B)(ii).  <u>Id.</u>, 485 U.S. at 208-09.  Therefore, as of 2005, it is clear that

individual debtors, such as the Browns, could not obtain approval of a chapter 11 plan

with a dissenting class of unsecured claims, when that plan calls for them to retain their

non-exempt interest in business entities, with the source of plan funding their future

earnings from those entities.

19

D.


Before discussing the 2005 statutory amendments as they apply to the

question of the continued existence of the absolute priority rule in individual chapter 11

cases, I note that the debtors in this contested matter propose to retain their interest in the

personal property they have claimed as exempt, as well as Mr. Brown's interest in his

three business entities.  Mr. Ferroni makes no mention about the debtors' retention of

exempt property as violative of the absolute priority rule.  See Ferroni's Post-Hearing

Memorandum, at 23.  The Dolans, however, do not identify in their post-hearing

memorandum the particular property interests that the debtors cannot retain.  Therefore,

they may take the position that the debtors' retention of exempt property would violate

section 1129(b)(2)(B)(ii).

Although the question of the application of the absolute priority rule to

exempt property was not altered by the Bankruptcy Abuse and Prevention and Consumer

Protection Act of 2005 ("BAPCPA"), as the Dolans may be raising this issue, and

because its resolution is consistent with my interpretation of amended section

1129(b)(2)(B)(ii), I shall address it.

While the Ahlers decision made clear by 1988 that the absolute priority rule

found in section 1129(b)(2)(B)(ii) applied in individual debtor chapter 11 cases, before

the 2005 amendments to the Bankruptcy Code the few courts that considered the question

whether the individual chapter 11 debtor's retention of exempt property violated this

provision were divided.  Compare, e.g., In re Fross, 233 B.R. 176 (table), 1999 WL 26886

(B.A.P. 10th Cir. Jan. 15, 1999) (exempt property cannot be retained), with, e.g., In re

20

Henderson, 321 B.R. 550 (Bankr. M.D. Fla. 2005) (exempt property can be retained),

aff'd, 341 B.R. 783, 789-90 (M.D. Fla. 2006).[13]

      Although the BAPCPA amendments to the Bankruptcy Code did not alter

the relevant Code provisions that gave rise to this division, they did, however, result in an

number of decisions that have considered whether Congress intended to overrule Norwest

Bank Worthington v. Ahlers and its application of the absolute priority rule in individual

chapter 11 cases.  In so doing, since 2006, the three courts expressly addressing the

exemption issue have held that retention of exempt property does not run afoul of section

1129(b)(2)(B)(ii).  See, e.g., In re Gerard, 2013 WL 4011191, at *4 (Bankr. E.D. Wisc.

Aug. 7, 2013); In re Maharaj, 449 B.R. 484, 493 n.4 (Bankr. E.D. Va. 2011), aff'd, 681

F.3d 558 (4th Cir. 2012); In re Steedley, 2010 WL 3528599, at *3 (Bankr. S.D. Ga. Aug.

27, 2010).[14]

      Section 1129(b)(2) provides in relevant part:

---

[13]Because only an individual can claim property as exempt, see 11 U.S.C. §
522(b)(1); In re BWP Transport, Inc., 462 B.R. 225, 234 n.18 (Bankr. E.D. Mich. 2011), this
issue concerning the scope of the absolute priority rule can only arise in individual chapter 11
cases.

[14]The recent decision, In re Lively, 717 F.3d 406 (5th Cir. 2013), appears to
assume, without discussion, that exempt property can be retained, for it states:

> Lively does not dispute that his plan fails to comply with the
> absolute priority rule, because it allows him to retain the
> above-listed valuable, non-exempt, pre-petition assets.

Id., at 408; see also In re Grasso, 2013 WL 3563674, at *9 n.13 ("Because the Chapter 11 Trustee
and Debtor do not propose to pay his estate's unsecured creditors the value of their claims as of
the effective date of any plan, the Debtor may not retain pursuant to any nonconsensual plan his
interest in any non-exempt, prepetition assets.").

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

***

(B) With respect to a class of unsecured claims--

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

The underlined portion of clause (ii) to subparagraph (B) was added in 2005 by BAPCPA.

Because clause (ii), before and after its amendment in 2005, prohibits retention by junior interest holders of "any property," rather than "any property of the bankruptcy estate," decisions such as In re Fross concluded that Congress intended that property claimed by the debtor as exempt falls within the scope of section 1129(b)(2)(B)(ii). Id., 1999 WL 26886, at *8.

I find more persuasive, however, the reasoning of those courts and commentators who have observed that property allowed as exempt is removed from the bankruptcy estate, see generally In re Orton, 687 F.3d 612, 615 (3d Cir. 2012); In re Mollo, 196 Fed. Appx. 102, 104 (3d Cir. 2006) (non-precedential) ("[O]nce property is exempted, it is 'no longer considered property of the bankruptcy estate.'") (quoting

22

Taylor v. Freeland & Kronz, 938 F.2d 420, 423 (3d Cir. 1991), aff'd, 503 U.S. 638

(1992)), and may be retained by the debtor as provided by section 522.[15]  See, e.g., United

States v. Security Indus. Bank, 459 U.S. 70, 72 n.1 (1982) ("The exemptions were

designed to permit individual debtors to retain exempt property so that they will be able to

enjoy a 'fresh start' after bankruptcy."); In re Benn, 491 F.3d 811, 813 (8th Cir. 2007)

("The Code then allows a debtor to 'exempt' certain property from the estate and retain it

for the purpose of making a 'fresh start' after the bankruptcy proceeding is concluded.");

In re Davis, 170 F.3d 475, 478 (5th Cir. 1999); Pristas v. Landaus of Plymouth, Inc., 742

F.2d 797, 799 (3d Cir. 1984).

        As the Third Circuit Court of Appeals observed, relying upon Bank of

America National Trust and Savings Association v. 203 North LaSalle Street Partnership,

the absolute priority rule in section 1129(b)(2)(B)(ii) only addresses property retained

under a chapter 11 plan "on account of," meaning "because of," the debtor's interest in

the property at the time of confirmation.  See In re PWS Holding Corp., 228 F.3d 224,

229 (3d Cir. 2000).  Property allowed as exempt, however, is retained because of section

522, independently of any plan provision or the confirmation process itself.  See In re

Bullard, 358 B.R. 541, 544-45 (Bankr. D. Conn. 2007).  Therefore, retention of exempt

property is outside the scope of section 1129(b)(2)(B)(ii).  See, e.g. In re Gerard, 2013

WL 4011191, at *4 (Bankr. E.D. Wisc. Aug. 7, 2013); In re Henderson, 321 B.R. 550,

---

        [15]For example, section 522(c) states in relevant part:

        Unless the case is dismissed, property exempted under this section
        is not liable during or after the case for any debt of the debtor that
        arose, or that is determined under section 502 of this title as if such
        debt had arisen, before the commencement of the case[.]

23

559-60 (Bankr. M.D. Fla. 2005), aff'd, 341 B.R. 783, 790 (M.D. Fla. 2006); 7 Collier on

Bankruptcy, ¶ 1129.04[3][d] (16th ed. 2012).

Moreover, since 1978, section 1123(c) has provided:

> In a case concerning an individual, a plan proposed by an
> entity other than the debtor may not provide for the use, sale,
> or lease of property exempted under section 522 of this title,
> unless the debtor consents to such use, sale, or lease.

While the literal language of section 1123(c) applies only to chapter 11

plans proposed by parties other than the individual debtor, the sparse legislative history

states that this provision was enacted to "protect[] an individual debtor's exempt property

[by its terms]."  H.R. Rep. No 95-595, 95th Cong., 1st Sess. at 407 (1977).  I find it

counterintuitive that Congress intended to insure that an individual chapter 11 debtor is

permitted to retain his or her exempt property as part of the confirmation process in all

instances other than when the debtor's own plan is at issue.

Indeed, the logic of those decisions that hold that the absolute priority rule

applies to any and all property interests retained by the debtor after confirmation,

including exempt property, seemingly would encompass even property interests that

Congress, for policy reasons, expressly excluded from the scope of the bankruptcy estate

in section 541(b) and the reach of creditors, such as retirement funds described in section

541(b)(5), educational trust funds in section 541(b)(6), and funds held by employers or

received from them under section 541(b)(7).  Such property interests need not be claimed

as exempt to be unavailable to a bankruptcy trustee or creditors, and are thus retained by

the debtor.  It is not persuasive to conclude that Congress required that a chapter 11

debtor relinquish such non-estate property as part of the confirmation process whenever

an impaired class of unsecured creditors does not support the proposed plan.

24

Accordingly, in considering whether Congress intended its 2005 amendments to the Bankruptcy Code to eliminate the absolute priority rule for individual chapter 11 debtors, I do so having concluded that, at the time BAPCPA was enacted, the scope of the absolute priority rule prohibited individual debtors from retaining non-exempt, prepetition estate property over the opposition of an impaired class of unsecured creditors.

III.

A.

The parties in this dispute all recognize that whether the absolute priority rule still applies in individual chapter 11 cases after the 2005 BAPCPA amendments is an issue that has divided courts.  In 2005, Congress added or modified numerous sections of chapter 11 regarding individual debtors.  Three such sections are clearly relevant to the analysis.

First, 11 U.S.C. § 1115 was added and states:

(a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541--

(1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and

25

(2) earnings from services performed by the
debtor after the commencement of the case but
before the case is closed, dismissed, or
converted to a case under chapter 7, 12, or 13,
whichever occurs first.

(b) Except as provided in section 1104 or a confirmed plan or
order confirming a plan, the debtor shall remain in possession
of all property of the estate.

Section 1115 was patterned after section 1306, applicable to chapter 13 cases.  The House

Report explains the addition of section 1115(a):

Section 321(a) of the Act creates a new provision under
chapter 11 of the Bankruptcy Code specifying that property of
the estate of an individual debtor includes, in addition to that
identified in section 541 of the Bankruptcy Code, all property
of the kind described in section 541 that the debtor acquires
after commencement of the case, but before the case is closed,
dismissed or converted to a case under chapter 7, 12, or 13
(whichever occurs first).  In addition, it includes earnings
from services performed by the debtor after commencement
of the case, but before the case is closed, dismissed or
converted to a case under chapter 7, 12, or 13.

H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. at 80 (2005).

Second, section 1129(a) was modified to add a new paragraph (15):

(15) In a case in which the debtor is an individual and in
which the holder of an allowed unsecured claim objects to the
confirmation of the plan--

(A) the value, as of the effective date of the
plan, of the property to be distributed under the
plan on account of such claim is not less than
the amount of such claim; or

(B) the value of the property to be distributed
under the plan is not less than the projected
disposable income of the debtor (as defined in
section 1325(b)(2)) to be received during the
5-year period beginning on the date that the first
payment is due under the plan, or during the
period for which the plan provides payments,
whichever is longer.

26

Thus, in an individual chapter 11 case, if the debtor's proposed plan does not provide for payment in full of an allowed unsecured claim then, upon the objection of that creditor to confirmation, the debtor's plan must provide for his or her projected disposable income to be a component of plan funding for at least five years. See, e.g., In re Newkirk, 2012 WL 830552, at *4 n.6 (Bankr. E.D.N.C. Mar. 9, 2012); In re Shat, 424 B.R. 854, 867 n.43 (Bankr. D. Nev. 2010).

Third, as was mentioned earlier, section 1129(b)(2)(B)(ii) was modified so that it now reads:

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(emphasis added).

The same House Report explains the addition of section 1129(a)(15) and the modification to section 1129(b)(2)(B)(ii) in the following paragraph:

> Section 321(c) amends Bankruptcy Code section 1129(a) to include an additional requirement for confirmation in a chapter 11 case of an individual debtor upon objection to confirmation by a holder of an allowed unsecured claim.  In such instance, the value of property to be distributed under the plan on account of such claim, as of the plan's effective date, must not be less than the amount of such claim; or be not less than the debtor's projected disposable income (as defined in section 1325(b)(2)) to be received during the five-year period beginning on the date that the first payment is due under the plan or during the plan's term, whichever is longer.  Section 321(c) also amends section 1129(b)(2)(B)(ii) of the Bankruptcy Code to provide that an individual chapter 11

> debtor may retain property included in the estate under section
> 1115 (as added by the Act), subject to section 1129(a)(14).[16]

H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. at 80 (2005).

To a large extent, the debate over the meaning of section 1129(b)(2)(B)(ii)
has involved interpreting its phrase: "the [individual] debtor may retain property included
in the estate under section 1115." See, e.g., In re Lively, 717 F.3d 406, 408 (5th Cir.
2013); In re O'Neal, 490 B.R. 837, 847 (Bankr. W.D. Ark. 2013); see also 7 Collier on
Bankruptcy, ¶ 1129.04[3][d] (16th ed. 2012).

Those courts adopting the so-called "broad view" have held that section
1115(a) was intended by Congress to supplant section 541(a), and thus this new provision
is the sole source for defining the scope of property of the bankruptcy estate in an
individual chapter 11 case, which property includes the debtor's prepetition as well as
postpetition property.  Accordingly, the broad view holds that in 2005 Congress
eliminated the absolute priority rule in individual chapter 11 cases since amended section
1129(b)(2)(B)(ii) permits individual debtors to retain section 1115(a)'s broad definition
of property of the estate.  See, e.g., In re Friedman, 466 B.R. 471, 482 (B.A.P. 9th Cir.
2012):

> Section 1115's identification of estate property consists of the
> property contained in § 541 and the two post-petition acquired
> assets—newly acquired property and income.  The so-called
> disputes over what "included" means in § 1129(b)(2)(B)(ii)
> and "in addition to" in § 1115 arise from misinterpretation of
> the words.  "Included" is not a word of limitation.  To limit
> the scope of estate property in §§ 1129 and 1115 would
> require the statute to read "included, except for the property
> set out in Section 541" (in the case of § 1129(b)(2)(B)(ii)),

---

[16]Section 1129(a)(14) contains the requirement that the debtor's domestic support
obligations be paid.

and "in addition to, but not inclusive of the property described
in Section 541" (in the case of § 1115).

A plain reading of §§ 1129(b)(2)(B)(ii) and 1115 together
mandates that the absolute priority rule is not applicable in
individual chapter 11 debtor cases.

(footnote omitted).

Courts favoring this interpretation also emphasize that Congress, when

amending chapter 11 in 2005, added a number of provisions similar or identical to chapter

13; and chapter 13, which permits individual debtors with regular income and liabilities

below certain amounts (set forth in section 109(e)) to reorganize, has no absolute priority

rule.  See, e.g., In re O'Neal, 490 B.R. at 850-51; In re Shat, 424 B.R. 854, 862 (Bankr.

D. Nev. 2010).  They also note that:

The broader view also saves Section 1129(b)(2)(B)(ii) from
an almost trivial reading; if the narrow view is taken, the
section protects only the value of aggregate postpetition
earnings payable after the fifth anniversary of plan
confirmation.

In re Shat, 424 B.R. at 868.  In other words, if the addendum to section 1129(b)(2)(B)(ii)

simply allows individual debtors to retain postpetition assets and earnings under the

absolute priority rule, then the provisions of section 1129(a)(15), which can obligate the

individual debtor to tender post-confirmation earnings for five years, greatly reduces the

import of this exception.[17]

---

[17]As one court noted, this argument does not consider that an individual debtor's
"projected disposable income," mentioned in section 1129(a)(15)(B), is generally an average of
prepetition income, as adjusted by "changes in the debtor's income or expenses that are known or
virtually certain at the time of confirmation."  Hamilton v. Lanning, 560 U.S. 505, 130 S. Ct.
2464, 2478 (2010).  There may be material improvements to the debtor's net monthly income
within the five year post-confirmation period that would not constitute projected disposable
income and that would render the debtor's retention of such improvements non-trivial.  See In re

(continued...)

Courts adopting the "narrow view" of section 1129(b)(2)(B)(ii) hold that its reference to section 1115 was intended by Congress to encompass only the property added by section 1115(a) to the prior section 541(a) definition of property of the estate. See, e.g., In re Lindsey, 453 B.R. 886, 905 (Bankr. E.D. Tenn. 2011); In re Gbadebo, 431 B.R. 222, 239 (Bankr. N.D. Cal. 2010); 5 Norton Bankr. L. & Prac. 3d, § 106:8 (2013). In other words, section 541(a) continues to define property of the estate in all cases, including individual chapter 11 cases, as generally limited to the debtor's prepetition assets.  The enactment of section 1115(a) simply adds an individual debtor's postpetition property and earnings to this estate.  Therefore, the narrow view holds that the absolute priority rule, after the enactment of BAPCPA, only allows individual debtors to retain the postpetition property and earnings added by section 1115(a) to the section 541(a) definition of the  bankruptcy estate, but not prepetition non-exempt property.  This interpretation of section 1129(b)(2)(B)(ii) is now the majority position, 7 Collier on Bankruptcy, ¶ 1129.04[3] (16th ed. 2013), and is the one endorsed by the three Courts of Appeals to have addressed the issue.  In re Lively, 717 F.3d 406 (5th Cir. 2013); In re Stephens, 704 F.3d 1279 (10th Cir. 2013); In re Maharaj, 681 F.3d 558 (4th Cir. 2012).

Support for the narrow view is derived from the absence of any legislative history suggesting that Congress intended to change the long-standing application of the absolute priority rule to all chapter 11 cases, including individual cases, see, e.g., In re

---

[17](...continued)
Lively, 467 B.R. 884, 89-92 (Bankr. S.D. Tex. 2012), aff'd, 717 F.3d 406 (5th Cir. 2013).
Moreover, the requirement of section 1129(a)(15)(B) is only triggered by an objection to confirmation by an unsecured creditor, and not simply by the failure of a class of unsecured creditors to affirmatively support the plan.  See, e.g., In re Washington, 2010 WL 1417708 (Bankr. N.D. Tex. Apr. 2, 2010).

Stephens, 704 F.3d at 1286-87;  In re Maharaj, 681 F.3d at 570-71; see generally, e.g.,

Hamilton v. Lanning, 560 U.S. 505, 130 S. Ct. 2464, 2473 (2010) ("Pre–BAPCPA

bankruptcy practice is telling because we 'will not read the Bankruptcy Code to erode

past bankruptcy practice absent a clear indication that Congress intended such a

departure.'") (quoting Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec.

Co., 549 U.S. 443, 454 (2007)); Cohen v. de la Cruz, 523 U.S. 213, 221 (1998), and from

the "convoluted statutory language that now exists after the 2005 Amendments."  5

Norton Bankr. L. & Prac. 3d, § 106:8 (2013); see In re Lively, 717 F.3d at 410.  As

observed by one court:

> A common thread running through many of the "narrow
> view" cases is that if Congress had intended to abrogate the
> absolute priority rule for individual Chapter 11 debtors, it
> would have done so in a far less convoluted way, particularly
> in light of the well established place of the absolute priority
> rule in bankruptcy jurisprudence.  See, e.g., Kamell, 451 B.R.
> at 509.  These cases note that if Congress had indeed had such
> an intent, it could have simply added the words "except with
> respect to individuals" at the beginning of § 1129(b)(2)(B)(ii).
> Karlovich, 456 B.R. at 682.

In re Maharaj, 681 F.3d at 565-66; see also In re Mullins, 435 B.R. 352, 360-61 (Bankr.

W.D. Va. 2010).

Courts have also observed that if Congress intended in 2005 to eliminate the

absolute priority rule in all individual bankruptcy reorganizations, it would have altered

the eligibility requirements for filing chapter 13 cases, since chapter 13 contains no

absolute priority rule:

> Congress would simply have amended the statutory debt
> ceilings for Chapter 13 cases set out in 11 U.S.C. § 109(e),
> and either eliminate them altogether or set them much higher.
> Congress did no such thing, instead clearly intending that
> Chapter 11 statutory provisions would continue to apply to

> individual Chapter 11 cases while recognizing that
> post-petition earnings of individual Chapter 11 debtors should
> be available under § 1129(b)(2)(B), and protected, as it is in
> Chapter 13 cases under 11 U.S.C. § 1306.

In re Karlovich, 456 B.R. 677, 682 (Bankr. S.D. Cal. 2010); see, e.g., In re Kamell, 451

B.R. 505, 510 (Bankr. C.D. Cal. 2011).

In considering the various arguments set forth above, I am persuaded that

the narrow view more accurately reflects congressional intent.  Indeed, section 321 of

BAPCPA, P.L. No. 109-8, which both added section 1115 and amended section

1129(b)(2)(B)(ii), as well as its legislative history, by addressing the new provisions in

sections 1115 and 1129 in tandem, implies that Congress amended section

1129(b)(2)(B)(ii) in order to preserve the absolute priority rule as it applied to individual

debtors prior to the 2005 Bankruptcy Code amendments.  That is, the addition of

postpetition assets and earnings to the definition of estate property in individual cases by

section 1115(a) triggered the amendment to section 1129(b)(2)(B)(ii), so as not to further

expand the scope of the absolute priority rule into postpetition property.  As one court has

thoughtfully observed:

> The effect of the new provision in § 1129(b)(2)(B)(ii) is not to
> abrogate the absolute priority rule, but to make it the same for
> individual and non-individual Chapter 11 debtors, as it was
> prior to BAPCPA.  In fact, when read in conjunction with
> newly added § 1115, the absolute priority rule with respect to
> individuals is exactly the same as it was pre-BAPCPA.  That
> is, prior to BAPCPA, property of the estate did not include
> post-petition acquired property and earnings for individuals
> and non-individuals alike.  Hence, post-petition acquired
> property and earnings could be retained by a Chapter 11
> debtor, individual and non-individual alike, without running
> afoul of the absolute priority rule.  The addition of § 1115
> potentially changed that by adding to the property of the estate
> of an individual post-petition acquired property and earnings.
> Without a corresponding change to § 1129(b)(2)(B)(ii),

individual debtors could no longer retain post-petition
acquired property and earnings if they wished to "cram down"
a plan.  By adding the language excepting the § 1115 property
from the absolute priority rule of § 1129(b)(2)(B)(ii),
Congress merely ensured that the absolute priority rule would
be the same as it had been prior to BAPCPA and be the same
for all Chapter 11 debtors.  In other words, what Congress
took from the individual debtor with its § 1115-hand, it
returned for application of the absolute priority rule with its §
1129(b)(2)(B)(ii)-hand.

In re Karlovich, 456 B.R. at 681; see also In re Lively, 717 F.3d at 409 ("When the

debtor's post-petition property and earnings were added to Chapter 11, however,

Congress also had to modify the absolute priority rule so that a debtor would not be

saddled with committing all post-petition property to satisfy creditors' claims."); In re

Kamell, 451 B.R. 505, 511 (Bankr. C.D. Cal. 2011).

Indeed, this analysis—which recognizes that it was only section 1115(a)'s

addition of postpetition assets and earnings to the definition of property of the estate that

triggered the need for Congress to amend section 1129(b)(2)(B)(ii) and exclude such

property from the scope of the absolute priority rule—is inferentially supported by the

conclusion made earlier: that property allowed as exempt may be retained without

violating the absolute priority rule, since exempt property is non-estate property and thus

is retained by an individual debtor independently of the confirmation process.[18]

Therefore, individual chapter 11 debtors who fail to obtain the consent of an

impaired class of unsecured creditors cannot retain prepetition non-exempt property

---

[18]If one were to conclude that current section 1129(b)(2)(B)(ii) was intended to
reach all property retained by the debtor, including exempt property, except as provided by the
2005 amendment, and also interpret the 2005 amendment broadly as covering both pre- and
postpetition property of the estate, the counterintuitive result is that the only property in an
individual chapter 11 case that would fall within the scope of the absolute priority rule is non-
estate property, such as exempt property.

unless that dissenting creditor class will receive distributions under the proposed plan equal in value, as of the plan effective date, to the amount of its claims.  11 U.S.C. § 1129(b)(2)(B)(i); see, e.g., In re Lively.  To the extent this interpretation renders confirmation difficult for individual chapter 11 debtors who operate businesses (and whose interest in those businesses cannot be claimed as exempt), as the debtors in this case suggest, see Debtors' Post-Hearing Memorandum, at 15, that difficulty was apparent as early as 1988, when the Supreme Court applied section 1129(b)(2)(B)(ii) in Ahlers; see Unruh v. Rushville State Bank of Rushville, Mo., 987 F.2d 1506 (10th Cir. 1993).  When it revised the Bankruptcy Code in 2005, Congress made a policy determination to leave the scope of the absolute priority rule unchanged, even as to individual chapter 11 debtors.  Courts are obligated to enforce that decision.

B.

One additional issue, the application of the new value exception in individual chapter 11 cases, must be considered in determining that these debtors cannot possibly reorganize under chapter 11.

Section 1129(a)(7) imposes a confirmation requirement known as the "best interest of creditors test."  "This test requires that each holder of an impaired claim or interest either accept the plan or receive under the plan not less than it would receive in a Chapter 7 liquidation."  See, e.g., In re Wireless Data, Inc., 547 F.3d 484, 495 (2d Cir. 2008); In re W.R. Grace & Co., 475 B.R. 34, 141 (D. Del. 2012).  Because exempt property is not liquidated in a chapter 7 case, see generally In re McCollum, 363 B.R.

789, 795 (E.D. La. 2007), to comply with this provision individual chapter 11 debtors

must propose a plan that provides to dissenting creditors at least the present value, as of

the plan effective date, of their non-exempt assets.  See, e.g., In re Hockenberry, 457 B.R.

646, 652-54 (Bankr. S.D. Ohio 2011).

As mentioned earlier, pursuant to section 1129(a)(15), if an unsecured

creditor objects to confirmation, and such creditor will not receive distributions under the

proposed plan equal in value, as of the plan effective date, to the full amount of its claim,

then the individual debtor's chapter 11 plan must provide for plan funding that includes

disposable income for at least a five year period.  See generally In re Stigliano, 483 B.R.

303 (Bankr. W.D. Pa. 2012).

Section 1123(a)(8), added in 2005, provides that a chapter 11 plan shall:

> in a case in which the debtor is an individual, provide for the
> payment to creditors under the plan of all or such portion of
> earnings from personal services performed by the debtor after
> the commencement of the case or other future income of the
> debtor as is necessary for the execution of the plan.

Plan payments made by an individual chapter 11 debtor that are derived

from post-confirmation earnings, even those required by section 1129(a)(15), can be used

to meet the best interest of creditors test found in section 1129(a)(7).  See In re

Bennington, 2013 WL 1686305 (Bankr. D. Utah Apr. 18, 2013); see also In re

Hockenberry, 457 B.R. at 653-54 (proposed annual payments were insufficient to meet

the requirements of section 1129(a)(7)).  Would payments made under section

1129(a)(15) also constitute "new value" when applying section 1129(b)(2)(B)(ii)?[19]

As discussed earlier, the Supreme Court in Norwest Bank Worthington v.

Ahlers instructed that plan funding consisting of payments derived from future earnings

do not constitute "new value" for purposes of any exception to absolute priority rule.  One

commentator has opined, however, that in enacting section 1123(a)(8) Congress implicitly

overruled this holding in Ahlers.  See 2007 No. 1, Norton Bankruptcy Law Advisor, at 1

(January 2007).  There is no reported decision that has agreed with this contention, nor

supportive legislative history, and I find it unpersuasive.

Section 1123(a)(8) does not mandate that individual debtors can only fund

their plans from the earnings of postpetition services.  Rather, it directs that such earnings

be so applied "as is necessary for the execution of the plan."  Thus, if a plan can be fully

funded from the sale of the debtor's assets it can be confirmed without the inclusion of

any post-confirmation earnings.  See In re Lippmann, 2013 WL 45628, at *1 (Bankr. D.

Utah Jan. 2, 2013).  Therefore, the addition of section 1123(a)(8) does not create any

tension with the Ahlers definition of a new value exception to the absolute priority rule.

Accordingly, consistent with the Supreme Court's directive in Ahlers, to the

extent that section 1129(b)(2)(B)(ii) implicitly contains a new value exception to the

absolute priority rule, an individual debtor's use of post-confirmation earnings as a

component of plan funding does not constitute new value.  However, plan payments

---

[19]If so, then the dispute over the proper interpretation of section 1129(b)(2)(B)(ii) in individual debtor cases may not be significant in many instances.  Here, there is no evidence as to the value of  Mr. Brown's interest in his three entities.  Theoretically, it may be less than the $75,000 that the debtors contend they would offer to their unsecured creditors.

derived from post-confirmation services, as permitted by section 1123(a)(8), are

considered in determining whether an individual debtor has met the fair and equitable

requirements of section 1129(b)(2)(B)(i) (payment in full) and thereby avoids the

application of the absolute priority rule found in clause (ii).  See generally In re

Lichtin/Wade, L.L.C., 478 B.R. 204, 212 (Bankr. E.D.N.C. 2012).


IV.


As noted at the outset, the movants seek dismissal of this chapter 11 case

pursuant to 11 U.S.C. § 1112(b)(1).  Section 1112(b) provides that, on request of a party

in interest, a court may dismiss a chapter 11 case or convert it to chapter 7, "whichever is

in the best interest of creditors and the estate, if the movant establishes cause." 11 U.S.C.

§ 1112(b)(1).[20]  Although subsection (b)(4) of section 1112 provides some specific

examples of circumstances in which cause for relief may arise, those examples are not

exclusive.  As observed by (now Chief) Bankruptcy Judge Frank of this court:

> Fundamental bankruptcy policy continues to support the
> proposition that the inability to propose a feasible
> reorganization or liquidation plan provides "cause" for
> dismissal or conversion of a chapter 11 case on request of an
> interested party.

In re DCNC North Carolina I, LLC, 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009); see also

In re SHAP, LLC, 457 B.R. 625, 629 (Bankr. E.D. Mich. 2011).

---

[20]Although section 1112(b)(3) directs that a hearing on such a motion be held
within 30 days of filing unless the movant expressly consents, here the parties jointly requested
that the initial scheduled hearing be postponed to a date beyond that 30-day deadline.

As earlier mentioned, the debtors in this contested matter concede that they cannot reorganize unless Mr. Brown can retain his non-exempt interests in his business entities: Design Associates, Design Build, and Build US.  They also concede that they cannot afford to pay Mr. Ferroni's allowed unsecured claim in full, even over time, and that there will be an impaired class of creditors—the one containing Mr. Ferroni—that will not approve any feasible plan they can propose.  Thus, as the debtors acknowledge, the imposition of the absolute priority rule in section 1129(b)(2)(B)(ii) precludes their ability to reorganize under chapter 11.  See Debtor's Post-Hearing Memorandum, at 2.

Therefore, the movants have established grounds for relief under section 1112(b)(1), and the exception to relief of section 1112(b)(2) is inapplicable because the debtors cannot meet the requirement of section 1112(b)(2)(A).  See In re Grasso, 2013 WL 3563674, at *8 (Bankr. E.D. Pa. July 11, 2013).

I also note that, given the debtors' assets and liabilities, no party in interest suggests that conversion to chapter 7 would be in the best interests of creditors and the bankruptcy estate.

Accordingly, an order will be entered dismissing this chapter 11 case. Moreover, as the movants requested at the hearing, this dismissal order will limit the debtors' ability to file future chapter 11 bankruptcy cases.  See generally 11 U.S.C. § 349(a); In re Casse, 198 F.3d 327 (2d Cir. 1999).

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: September 26, 2013

38